```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


PIOTR MYRDA; EDWARD L. VOLK, as )
the Personal Representative of  )
the Estate of GRZEGORZ          )
KAZIMIERZ MYRDA, Deceased, and  )
BERNADETA TERESA PLEWA,         )
Deceased,                       )
                                )
          Plaintiffs            )
                                )
     v.                         )   Case No. 2:06 cv 123
                                )
SWIFT TRANSPORTATION COMPANY,   )
INC., and CLIFFORD COLYER,      )
                                )
          Defendants            )
```

OPINION AND ORDER

This matter is before the court on the Motion to Compel Defendant's Release of Its Swift 2004 Driver Manual, Its Train to Retain Driver Training Manual and Its Certified Driver Mentor Manual filed by the plaintiffs, Piotr Myrda and Edward L. Volk, on April 25, 2007 (DE 35), and the Motion to Compel Production of Document or Alternatively for an *In Camera* Inspection of All Accident/Incident Reports and Documents Generated by Clifford Colyer and Swift Transportation Company filed by the plaintiffs on April 25, 2007 (DE 34). For the reasons set forth below, the motion to compel the production of the manuals (DE 35) is **GRANTED,** and the motion to compel production of all accident/incident reports and documents (DE 34) is **DENIED**.

Background

On November 7, 2005, a vehicle operated by Bernadeta T. Plewa, in which plaintiffs Piotr Myrda and Grzegorz K. Myrda were

passengers, hit a deer while traveling on Interstate 80.  The travelers exited the vehicle, and while standing in the leftmost shoulder of the roadway, were struck by a tractor trailer operated by Clifford Colyer.  At the time of the accident, Colyer was employed as a driver by the defendant, Swift Transportation Company.  As a result of the accident, Piotr Myrda was severely injured, and both Plewa and Grzegorz Myrda were killed.  Edward L. Volk was appointed personal representative of the estates of both Plewa and Grzegorz Myrda.  Piotr Myrda and Volk brought claims against Colyer and Swift Transportation seeking recovery for injuries sustained and expenses incurred from the incident.

Plaintiffs' motions to compel regard two requests for production served on Swift on November 21, 2006 and February 27, 2007.  The first request seeks disclosure of the Swift 2004 Driver's Manual, the Train to Retain Driver Training Manual, and the Certified Driver Mentor Manual.  Swift responded to the request by contending that the materials sought were proprietary and confidential and only would be produced subject to an agreed protective order entered by the court.  Swift drafted an Agreed Protective Order, but it never was executed by the plaintiffs. (Def. Exh. C, pp. 2-4)

The plaintiffs also requested production of all accident/incident reports and documents generated by Swift as a result of the accident.  Swift answered this request by producing the first three pages of a 39-page document entitled Swift Transportation Accident/Incident Detail Listing (Pltf. Exh. B,

2

pp.3-5), but intimated that the remaining pages of the document were immune to discovery under the work product privilege.

## Discussion

Under the Federal Rules, a party is entitled to conduct discovery on any matter that is "relevant to the claim or defenses of any party." Federal Rule of Civil Procedure 26(b)(1). Although amendments to Rule 26 narrowed the standard of relevance in discovery to matters related specifically to "claims or defenses," relevance remains broadly construed. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002)("The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to Rule 26(b)(1)."). Discovery continues to have limits however, and these limits become more formidable as the showing of need decreases. *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d. 1108, 1111 (N.D. Ill. 2004).

When a party fails to respond or provides evasive or incomplete answers to discovery requests, the opposing party may seek an order compelling disclosure. Federal Rules of Civil Procedure 37(a)(2)-(3). Provided that the information sought meets the standard of relevancy required by the Federal Rules, the burden of establishing why a particular discovery request is improper rests on the objecting party. *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). Objections to discovery requests must be raised with specificity, and raising such objections does not shift the burden to the

3

requesting party.  *Graham*, 206 F.R.D. at 254. The court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines Inc.,* 95 F.3d 492, 496 (7th Cir. 1996).

Neither party disputes the relevancy of the information sought through the two discovery requests.  Rather, Swift asserts that the information requested is entitled to protection despite its relevancy.

Regarding plaintiffs' request for the Swift 2004 Driver's Manual, the Train to Retain Driver Training Manual, and the Certified Driver Mentor Manual, Swift maintains that the materials are proprietary and confidential, and it specifically objects to disclosure absent an agreed protective order.

Although pretrial discovery is usually conducted in private, the public retains an interest in all proceedings conducted by the court. *Citizens First National Bank of Princeton v. Cincinnati Insurance Company*, 178 F.3d 943, 944 (7th Cir 1999).  However, in order to protect the privacy interests of the parties, Rule 26(c)(7) allows  the court to grant protective orders shielding trade secrets and other confidential research, development, or commercial information provided good cause is shown. *Zahran v. Trans Union Corp.*, 2002 WL 31010822 at *1 (N.D. Ill. September 9, 2002).  Court-entered protective orders can stipulate that confidential information not be revealed or only be revealed in a specified manner.  Rule 26(c)(7).  The party seeking protection

4

has the burden of establishing that (1) the information sought to be protected is a trade secret or other form of confidential information and (2) there is good cause for entry of the protective order.  See *Hamilton v. State Farm Mutual Automobile Insurance Company*, 204 F.R.D. 420, 422 (S.D. Ind. 2001).

In making the first inquiry, the court looks to substantive state law to define trade secret. See *Hamilton*, 204 F.R.D. at 423. See also 26 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §5644 at 339-341 (2nd ed. 1994)("We assume, then, that in defining 'trade secret' for purposes of the common law privilege under Federal Rule 501 or interpreting state versions of Rejected Rule 508, courts will look to the substantive law of trade secrets; that is, to state law.").

The Indiana Uniform Trade Secret Act defines a "trade secret" as

> information including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (1) derives independent economic value from not being generally known or readily ascertainable to other people who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
>
> I.C. §24-2-3-2

See also *Hamilton*, 204 F.R.D. at 423.

Swift argues that the manuals contain details of their methods and techniques for recruiting, training, and retaining

5

their truck drivers and reflect a significant investment of time and energy. Although there is no evidence that the practices detailed in the manuals are unique to Swift, the company contends that disclosure of the information would harm their competitive advantage in an environment characterized by high driver turnover and decreasing driver availability. Bald assertions of confiden-tiality and competitive harm, however, are insufficient to prove protection is warranted. See *Zaharan*, 2002 WL 31010822 at *4.

Further, while the manuals may have economic value to the company because of the time spent creating them, it is unclear why the information in the manuals would have any economic value to Swift's competition. Swift offers no evidence that the programs documented in the manuals have stabilized the company's work force or thwarted the high-turnover, low-recruitment trend. Because there is no evidence that the programs specific to Swift are more successful than those implemented at other companies, there is no competitive or independent economic benefit in keeping the manuals secret. See *Hamilton*, 204 F.R.D. at 423. *See also* *Buffets, Inc. v. Paul Klinke*, 73 F.3d 965, 969 (9th Cir. 1995) (holding that recipes did not have independent economic value because there was no evidence that the secrecy of the recipes lead competitors to be unsuccessful).

Additionally, Swift has offered no evidence that the company has exerted any effort to maintain the secrecy of the manuals. Swift does not contend that the manuals were stored in locked file cabinets, in areas not readily accessible to the public, or

6

even that the manuals were clearly labeled confidential or proprietary.  *Hamilton*, 204 F.R.D. at 423 (indicating similar actions were reasonable to protect confidential information). *See also* *Cook Incorporated v. Boston Scientific Corporation*, 206 F.R.D. 244, 248 (S.D. Ind. 2001)(finding that in addition to proving disclosure of information may lead to competitive harm, the objecting party must establish there were steps taken to maintain the secrecy of the materials).

   Moreover, the manuals are distributed to drivers hired by Swift, and Swift has presented no indication that limits are placed upon the drivers' use of these manuals.  Based on the limited tenure of truck drivers and the likelihood of drivers moving from truck company to truck company, (Def. Exh. A) Swift cannot contend that it planned for the manuals to remain confidential and solely within the confines of their company.  *See* *Buffets, Inc.*, 73 F.3d at 969 ("[G]iven the limited tenure of Buffet employees, and the fact that they often move from restaurant to restaurant, a company which allows its employees to keep job position manuals cannot be heard to complain when its manuals fall into the hands of its rivals.").

   Because Swift has not shown the manuals are privileged as a trade secret, there is no need to assess whether good cause supports the entry of a protective order.  Accordingly, plaintiffs' motion to compel disclosure of the manuals is **GRANTED**.

   Regarding plaintiffs' request for the production of all accident/incident reports and documents generated as a result of

7

the incident, Swift has responded by disclosing the initial three pages of the report but specifically has objected to releasing the remainder of the document under the work product doctrine.

The work product privilege protects an attorney's litigation strategies and individual mental impressions from encroachment by opposing counsel. *Broadnax v. ABF Freight Systems, Inc.*, 180 F.R.D. 343, 345 (N.D. Ill. 1998)(*citing* *Binks Manufacturing Company v. National Presto Industries, Inc.*, 709 F.2d 1109 (7th Cir. 1983)). As described by Rule 26(b)(3), documents and other materials that otherwise would be discoverable, and that are prepared in anticipation of litigation by or for a party or a party's representative, are immune to discovery. *See* *Taroli v. General Electric Company*, 114 F.R.D. 97, 98 (N.D. Ind. 1987). Documents covered by the work product privilege can be discovered if the party seeking discovery establishes a substantial need for the materials and an inability to obtain the equivalent information without enduring undue hardship.  Rule 26(b)(3).

In determining if a document is entitled to protection, the court should examine whether "in light of the nature of the document and the factual situation of a particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Binks Manufacturing Company*, 709 F.2d at 1119 (*quoting* *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977)). Preparation for trial can begin prior to the time suit is formally commenced. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D.

8

610, 614 (N.D. Ill. 2000).  However, the document must have been created to aid in the trial of a specific, articulable claim that already has arisen and is likely to lead to future litigation. *Caremark, Inc.,* 195 F.R.D. at 614; *Mazan v. Schmelzer*, 111 F.R.D. 470, 472 (N.D. Ind. 1986). Documents prepared in anticipation of litigation are not prepared in the ordinary course of business, and the primary motivating purpose behind the creation of the document is for use in possible upcoming litigation. *Binks Manufacturing Company*, 709 F.2d at 1119.  The fact that a party retained a lawyer, initiated an investigation, or that litigation eventually ensued is not dispositive on the issue of whether litigation was anticipated. *Broadnax*, 180 F.R.D. at 346.

Swift argues that the document falls under the purview of the work product privilege because it contains settlement and strategy considerations, evaluation about potential liability, and defense considerations discussed with Swift's counsel.  *See Broadnax*, 180 F.R.D. at 347 (asserting the work product privilege over a document containing similar information).

Swift further argues that the remaining 36 pages of the accident report were created in anticipation of future litigation.  First, the pages were drafted after Colyer had reported the accident and indicated that two of victims had died and that a third was severely injured.  The fact that a death is involved in an accident does not necessarily change ordinary-course-of-business investigations that are completed after every accident and serve a variety of different functions. However, once an

9

accident occurs where a person is severely injured, the anticipation of the filing of a claim is undeniable. *See* **Broadnax**, 180 F.R.D. at 346; **Fontaine v. Sunflower Beef Carrier, Inc.**, 87 F.R.D. 89, 92 (E.D. Mo. 1980).

The document created by Swift was not a routine report created in response to every accident. The document did not merely contain factual information about the crash and methods of avoiding similar incidents in the future, but rather the thoughts, insights, and notes of the claims adjuster and the lawyers in preparation for a future defense at trial.

Furthermore, Swift had an objectively reasonable basis for anticipating the litigation as soon as the accident occurred since they knew the potential plaintiffs and their causes of action. These suspicions of litigation were sustained two days after the crash, when all of the victims already were represented by counsel.

Additionally, Swift argues that the dispatching of a claims adjuster and an attorney to the scene of the accident on the night it occurred further illustrated that the accident report was created in anticipation of litigation. Though all documents created after an attorney or a claims adjuster is retained are not necessarily covered by the work product privilege, consultation between an insurance company and an attorney during an investigation is an important factor that weighs in favor of finding a work product privilege. **Mazan**, 111 F.R.D. at 472; **Taroli**, 114 F.R.D. at 99.

10

The plaintiffs argue that even if the document is covered under the work product privilege, any factual statements by third-parties contained in the report, specifically the statement of a police officer at the scene of the accident, should be disclosed.  While it is true that purely factual information is not protected by the work product privilege, there is no requirement that the factual information be supplied through the protected document.  See *Broadnax*, 180 F.R.D. at 343, 345.  Instead, factual information that the adverse party has learned can be made available through both depositions and interrogatories, neither of which are shielded by the work product privilege. *D'Alonzo v. J.B. Hunt*, 2006 WL 3511712 at *2 (E.D. Pa. Dec. 4, 2006).  The plaintiffs have access to all witnesses and state that a deposition of the police officer has been scheduled.

The plaintiffs have not proven any substantial need for the information in the report or undue burden in obtaining the same information.  Moreover, the plaintiffs have not displayed that efforts to obtain similar materials, such as a statement from the police officer, have proved futile.  See *Fontaine*, 87 F.R.D. at 93.  Accordingly, the motion to compel production of the report is **DENIED**.

_____

For the foregoing reasons, the Motion to Compel Defendant's Release of Its Swift 2004 Driver Manual, Its Train to Retain Driver Training Manual and Its Certified Driver Mentor Manual filed by the plaintiffs, Piotr Myrda and Edward L. Volk, on April

11

25, 2007 (DE 35), is **GRANTED**, and the Motion to Compel Production of Document or Alternatively for an *In Camera* Inspection of All Accident/Incident Reports and Documents Generated by Clifford Colyer and Swift Transportation Company filed by the plaintiffs on April 25, 2007 (DE 34) is **DENIED.**

ENTERED this 13th day of July, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge