# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| PIOTR MYRDA, EDWARD L. VOLK, | ) | |
| as the Personal Representative of the Estate | ) | |
| of GRZEGORZ KAZIMIERZ MYRDA, | ) | |
| Deceased, and as the Personal Representative | ) | |
| of the Estate of BERNADETA TERESA | ) | |
| PLEWA, Deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:06-CV-123 JVB |
| | ) | |
| v. | ) | |
| | ) | |
| SWIFT TRANSPORTATION COMPANY, | ) | |
| INC., and CLIFFORD COLYER, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. For the reasons set forth below, the Motion is **DENIED**.

**A. Background**

Plaintiffs filed their Amended Complaint in three counts on August 30, 2006. In Count I, Plaintiff Piotr Myrda seeks damages for injuries he sustained in a traffic accident. In Count II, Plaintiff Edward L. Volk, as the personal representative of the estate of Grzegorz Myrda, pursues damages for Grzegorz's death in the same accident. In Count III Volk, as personal representative, demands compensation for the death of Bernadeta Plewa, the third casualty of the accident. Defendants' Motion for Partial Summary Judgment, filed on January 22, 2008, is

directed to Count III..

The Amended Complaint describes an accident that occurred on November 7, 2005, on Interstate 80 in Porter County, Indiana. Bernadeta Plewa was the driver of a westbound vehicle in which Piotr Myrda and Grzegorz Myrda were passengers. The vehicle struck a deer. Bernadeta stopped in the left lane of I-80 and all three occupants got out. They were standing on the shoulder next to the left lane when a vehicle owned by Swift Transportation Company, Inc., and driven by Defendant Clifford Colyer struck them. Piotr Myrda was injured; Grzegorz Myrda and Bernadeta were killed. Volk seeks funeral, burial, and headstone expenses as well as other, unspecified damages.

At the time of her death, Bernadeta was a 22-year-old student at the Krakow University School of Economics residing in Poland with her parents and thirteen-year-old brother. She had come to this country for a visit with her boyfriend. She was survived by her parents and younger brother, two older siblings, and her grandmother. Her father died in January 2006.

Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332 and is found to be present. Plaintiff Piotr Myrda is a citizen of Poland.[1] Decedent Grzegorz Myrda and Bernadeta Plewa were citizens and residents of Poland when they died.[2] Under § 1332(c)(2), their personal

---

[1] Plaintiff Piotr Myrda does not allege the place of his residence nor state whether he has permanent resident alien status in the United States. Under 28 U.S.C. § 1332 (a) if he did have such status and were domiciled in either Arizona or Texas, diversity would be destroyed. However, because the Plaintiff has alleged that he is a citizen of Poland, the Court may "indulge the assumption that [he] is domiciled outside the United States, and leave it to the challenger to allege otherwise if there is reason to believe that the foreigner is a permanent resident who would destroy diversity." *Karazanos v. Madison Two Assoc.* 147 F.3d 624, 628 (7th Cir. 1998).

[2] Plaintiff Volk made the Court's task of determining jurisdiction under 28 U.C.S. § 1332 more complicated by attaching as "Appendix 2" to his response to Defendants' Motion for Summary Judgment what was represented to be the Amended Complaint, but which does not match the Amended Complaint filed as DE 16. DE 16 properly alleges jurisdiction, while Appendix 2 (DE 79-3) apparently an earlier draft of the Amended Complaint (*see*, *e.g.*, ¶ 22 of DE 79-3, which reads "Tallis to add.") does not.

representative is deemed to share their citizenship. Defendant Swift Transportation Company, Inc., is a corporation organized under the laws of the State of Arizona, having its principal place of business in the State of Arizona. Defendant Clifford Colyer is a citizen of the State of Texas. Each Plaintiff alleges that the amount in controversy exceeds the jurisdictionally required amount of $75,000.

### B.  Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular

claim and "only disputes over facts *that might the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**C. Analysis**

**(1) Summary of Arguments**

The State of Indiana has created three types of wrongful death actions, none of which is available to Bernadeta Plewa's personal representative, according to Defendants. Indiana Code § 34-23-1-1 is the original wrongful death statute ("WDS"). Financial dependency is required for recovery under the WDS. The second type of action, created by Indiana Code § 34-23-2-1, the "child wrongful death statute," ("CWDS") permits recovery for the death of a child (defined as an unmarried individual under the age of 20 or under the age of 23 and enrolled in school at the time of death) in an action brought by a surviving parent. Indiana Code § 34-23-1-2 , the

4

"adult person wrongful death statute," ("APWDS") applies to the death of an adult with no surviving dependents.  An "adult person" is defined as one who is not a child as defined in § 34-23-2-1, the CWDS.

Defendants argue that Bernadeta Plewa is without dependent next of kin as required by the WDS.  Rather, she is a child as defined in the CWDS whose parents did not bring an action under the CWDS before the expiration of the statute of limitations. Thus Defendants conclude that no wrongful death remedy is available to her personal representative.  Defendants argue alternatively that Bernadeta's personal representative has at best only a limited claim under the APWDS, capped at $300,000.  Plaintiff Personal Representative Volk counters that there is sufficient evidence of Bernadeta's parents', grandmother's, and younger brother's dependency on her to make Volk the proper plaintiff under § 34-23-1-1, the WDS.

**(2)  Facts Related to Dependency**

According to the deposition testimony of Bernadeta's mother,  Krystyna Plewa, at the time of her death Bernadeta lived in Poland with her parents and younger brother.  In July 2004, Mr. and Mrs. Plewa had deeded their house and farm to Bernadeta. In the deed Bernadeta declared that in exchange for the transfer of the property she committed herself to provide for her parents' life-long support and care by supplying lodging, food, clothing, utilities, health and nursing care, and funerals for them. Bernadeta helped her mother with the housework and cooking.  She also helped take care of her grandmother by changing her diapers.  Bernadeta had paid her own college tuition and expenses for the two years preceding her death. She had worked abroad to earn money for her education. Before Bernadeta's death, the family's income consisted

5

of Mr. Plewa's disability pension from the government of Poland in an undisclosed amount and some income from their cows.  Asked at her deposition whether, after the Plewas deeded their home to Bernadeta, Bernadeta took care of them as she had agreed, Mrs. Plewa replied "Yes, she did but they were still able to work together."[3] Mrs. Plewa and Bernadeta's younger brother have continued to live in the house since her death.

Defendants point to Volk's Answers to Interrogatories to establish that Bernadeta had no dependent next of kin. In answer to Interrogatory No. 11 regarding work history for the previous ten years, Volk responded that Bernadeta was a student and that "[i]nvestigation continues." Volk responded to Interrogatory No. 13 that Bernadeta had not engaged in any business or self-employment in the previous ten years.  Asked in Interrogatory No. 20 to identify all instances of loss of financial support resulting from Bernadeta's death, Volk answered: "None, investigation continues."  In reply to Interrogatory No. 24, requesting the names and addresses of the people with whom Bernadeta's dependents were living at the time of her death, Volk replied "Bernadeta Teresa Plewa had no dependents."  He also stated that no lost wages were being claimed, although investigation was ongoing, and that damages for lost household services were "N/A."

Plaintiff Volk contends that these interrogatory answers were made on or about February 23, 2007, before Krystyna Plewa's deposition was taken on May 2, 2007, when "the true nature of [Bernadeta's] family's dependency" became known to him (Pl.'s Br. 6).  He asserts that he

---

[3]There is much discussion in the briefs as to what this response means. As best the Court can determine, the procedure at this video deposition, which took place in Poland, was for the attorneys to ask questions in English that were translated into Polish for Mrs. Plewa.  Her responses in Polish were translated on the spot. The questions in English and the English translation of Mrs. Plewa's answers were later transcribed from cassette tapes.  Defendants assert that often the translator substituted third person pronouns for the first person actually used by Mrs. Plewa, so that perhaps the accurate translation of the answer quoted above is "Yes, she did but *we* were still able to work together."

should be allowed to supplement and correct his answers to conform to Mrs. Plewa's deposition testimony.

**(3) Discussion of Dependency Issue**

Under Indiana law, a decedent need not have been legally obligated to support an individual for that person to qualify as a "dependent next of kin" under the WDS.  Neither is total dependence required.  An individual may be partially dependent even though he could survive without the contribution made by the deceased. *Lustick v. Hall*, 403 N.E.2d 1128, 1131-1132 (Ind. App.1980). It must be shown, however, that the claimed dependent had a "need or necessity for support . . . coupled with the contribution to such support by the deceased." *Estate of Sears v. Griffin*, 771 N.E.2d 1136, 1139 (Ind. 2002) (citations omitted).

Defendants argue that Volk has not pointed to facts from which dependency can be shown.  They note that Volk has never amended his answers to their interrogatories indicating that Bernadeta had no dependents.  They characterize her help with housework and cooking and tending to her grandmother as  "mere gifts, donations and acts of generosity" that do not support a finding of dependency.  With regard to the fact that Bernadeta's parents and brother were living in the house she owned, which had been deeded to her  in exchange for her promise to provide life time care to her parents, Defendants argue that there is no testimony on whether her parents paid rent, so that Volk has not established that Bernadeta was in fact providing any kind of support by sheltering them in her house.  They further argue that there is no evidence that her parents and brother actually needed Bernadeta's support.  They claim that Bernadeta's promise to care for her parents related to the future and as such is not evidence of a need for support at

the date of Bernadeta's death.  Finally, they point to the absence of evidence that the alleged dependants lost any necessary support as a result of Bernadeta's death because her mother continues to live in the same house on the same farm.

As to the Defendants' protest that Volk has not amended his interrogatory answers, they fail to provide the Court with any authority to suggest that Plaintiff is bound by those answers unless he formally amends them.  Nor do they argue that the Court cannot consider Mrs. Plewa's later deposition testimony because it contradicts the personal representative's earlier unamended interrogatory answers. Accordingly, the Court will consider Mrs. Plewa's deposition testimony in determining whether there is a genuine issue as to whether Bernadeta had dependents when she died.

On the issue of lack of evidence of Bernadeta's contribution, from Mrs. Plewa's testimony that after the property was transferred to Bernadeta she had taken care of her parents as she had agreed, it is a reasonable to infer that Bernadeta did not charge her parents and brother rent.  Thus there is sufficient evidence of Bernadeta's contribution to her parents' and younger brother's support to create a triable issue. Defendants' claim that Bernadeta's agreement to care for her parents was a promise for the future only is not supported by Mrs. Plewa's deposition testimony or the undisputed fact that Bernadeta had owned the house and farm since July of 2004 and her parents continued to live there up to the time of Bernadeta's death.  On the claim that Mrs. Plewa lost no necessary support as a result of Bernadeta's death because she continues to live in the same home, viewing Mrs. Plewa's testimony in the light most favorable to Volk, Mrs. Plewa is now a co-owner of the property with her three surviving children.  It cannot be assumed that she has a right to continue to live in the house, or that her surviving children will

permit her to do so on the same terms that Bernadeta agreed to.  The Defendants have provided no authority for the proposition that if, after a decedent's death, an alleged dependent obtains the support formerly contributed by the decedent from a different source, dependency on the decedent at the time of her death is thereby negated.

The Court also finds that there is sufficient evidence of the Plewa family's need for support from Bernadeta.  *Lustick, id.* and *Necessary v. Inter-State Towing*, 697 N.E. 2d 73 (Ind. App. 1998), are instructive on the way in which Indiana courts view this prong of the test for dependency.  In *Lustick*, the decedent was the divorced mother of two adoptive children.  Her former husband had been given provisional and final custody of the children, while the decedent had visitation rights.  She had not been ordered to pay support.  In the month before her death (she died three days after the final dissolution decree was entered), she had moved back to the family home and cared for the children.  During much of this time the decedent's former husband was away on business but continued to pay the major household bills.  The Indiana Court of Appeals' opinion does not disclose whether her former husband had the wherewithal to pay for someone else to care for the children.  The Court of Appeals reversed the trial court's judgment on the evidence that the children were not dependent on the decedent, holding that a jury could have found that a degree of partial dependency existed.

In *Necessary* an adult son, Scott, and a grandson, Joseph, lived with the decedent, Juanita, in a home owned by Scott.  They shared household expenses.  Scott paid the mortgage and provided and maintained a car for his mother. Juanita contributed $250 per month toward the cost of food and $311 for utilities.  Scott's income in the year before his mother's death was $39,821; Joseph earned $23,140; Juanita's income was $20,859.  In addition to her financial

9

contributions Juanita provided her son and grandson with love, affection, guidance and services such as cooking, cleaning and tailoring. The trial court granted partial summary judgment, holding that Juanita had no dependents. The Court of Appeals reversed, concluding that a jury question was presented as to Scott's or Joseph's dependence. The court noted that dependency is not measured by monetary contributions alone and can be established through love, affection and services rather than just financial contributions. The Court pointed out that Juanita's contributions to the household were regular and substantial, made on a daily basis over an extended period of time.

The facts of *Lustick* and *Necessary* suggest that the "need" requirement is fulfilled if the alleged dependents regularly received some substantial, tangible element of support from the decedent, regardless of whether their need might have been met in some other way. These cases teach that it is not necessary to calculate need with mathematical precision. Obviously, the Plewa family required a place to live and there is evidence that their daughter supplied it. It is not known that they could not afford to live somewhere other than in their daughter's house, but that does not appear to be a requirement for establishing dependency under Indiana law. Providing them with lodging for more than a year was a regular and substantial, tangible contribution to the support of Bernadeta's parents and younger brother. Accordingly the Court determines that genuine issues of material fact exist as to whether Bernadeta's parents and brother were her dependents when she died. With regard to Bernadeta's grandmother, however, the Court does not find the kind of regular, substantial contribution which would permit a jury to conclude that the grandmother is Bernadeta's dependent next of kin within the meaning of § 34-23-1-1.

10

**D.  Conclusion**

For the foregoing reasons, Defendants' motion for partial summary judgment is

**DENIED.**

SO ORDERED on April 7, 2008.

                                               s/ Joseph S. Van Bokkelen
                                               Joseph S. Van Bokkelen
                                               United States District Judge